BOSTWICK et al. v. MUTUAL LIFE INS. CO. OF NEW YORK.

(Circuit Court of Appeals, Fifth Circuit. April 15, 1918. Rehearing Denied June 8, 1918.)

No. 3178.

CORPORATIONS ☞426(10)—CONTRACTS—AUTHORITY OF OFFICERS.

Plaintiffs' sued defendant, a large life insurance company, for services rendered in adjusting and settling certain claims against defendant, amounting to several hundred thousand dollars. They were employed by the assistant superintendent of one of defendant's departments, who during the time the services were being rendered was in constant correspondence with plaintiffs, and also with the superintendent, who knew of the employment, and both knew, as appeared from their letters, that plaintiffs expected to be paid, and intended that they should be. The letters were also of record in the office of defendant. Held, that whether the controlling officers of defendant had actual knowledge of the services, as was probable in view of the sums involved, or left the matter entirely to the department, they were chargeable with notice, and that defendant could not accept the benefit of the acts of the department, necessarily vested with large discretion, and repudiate its obligations incurred, by denying its authority.

In error to the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Action at law by William M. Bostwick, Jr., and others, against the Mutual Life Insurance Company of New York. Judgment for defendant, and plaintiffs bring error. Reversed.

A. H. King and George C. Bedell, both of Jacksonville, Fla., for plaintiffs in error.

W. E. Kay and J. L. Doggett, both of Jacksonville, Fla., for defendant in error.

Before PARDEE and BATTS, Circuit Judges, and FOSTER, District Judge.

BATTS, Circuit Judge. Plaintiffs in error sued defendant in error for the value of their services in the adjustment of claims against the latter. The issues involved in the case and the basis of the instructions to the jury to return a verdict for the defendant are indicated by the following statement of the trial judge:

"It is my opinion that this evidence does not show a special authorization by the defendant to Price to employ the plaintiffs to perform the services in the Painter cases, or bringing about the settlement of same; nor does this evidence show the holding out by defendant of Price as such agent in such manner as to justify the plaintiffs to have assumed or presumed such authority; nor does this evidence show a voluntary acceptance of the benefits of any services rendered by plaintiffs in attempting to bring about any such settlement in such manner as to raise the implied promise necessary to make the defendant liable at the suit of the plaintiffs, for a reasonable compensation of such services; nor does this evidence show such ratification of the acts of Price as would dispense with prior authorization."

Price was assistant superintendent of the department of revision and inspection of the defendant company. Dr. P. N. Foshay was superintendent. The claims in which services were rendered by plaintiffs against defendant and other companies involved approximately $800,000. Price was in charge of the adjustment, and was in constant communication with the superintendent by letter and in person. The relationship of the plaintiffs to the work in hand was disclosed in the correspondence. The correspondence between Price and Bostwick indicates that plaintiffs expected to be paid for their services. The correspondence between Price and Foshay shows that the latter knew that plaintiffs expected pay and that Price and Foshay intended that they should be paid. Some of the correspondence indicating these facts is as follows:

Letter of May 14, 1914, from Price to Bostwick, contains this sentence:

"Your fee to be additional, if matter concluded through you."

Letter from Price to Foshay, dated April 15, 1915, after referring to work by Bostwick:

"He also says that, if he wins this case, the company will have to pay him what he asks."

Letter from Foshay to Price, dated April 22, 1915:

"I can see that one of your big troubles ahead is going to be the handling of B. We know that he is entitled to a reward; but, of course, we cannot

agree to its being excessive. However, that may take care of itself as the situation moves along."

Letter from Price to Foshay, dated May 2d:

"Now, of course, Bostwick and Jones have been of service to me."

Bostwick testified that, upon a suggestion from Price, he went to New York to see Dr. Foshay; that he met Foshay in the office of the insurance company in New York; that Foshay wanted to know if he could bring about the settlement; that he explained the whole situation to Foshay; that upon his return Price, in accordance with an understanding with Foshay, reported to him; that Price then assured him that his fees would be taken care of on the basis of a fair settlement by the company, Price representing that he was authorized to make this statement.

The evidence indicates that much correspondence (including the letters heretofore referred to) passed between Price and Foshay, and between Price and Bostwick, which became records of the company. These records were produced by the president of the company as the result of an ancillary contested proceeding in the Southern district of New York. These letters, disclosing information with reference to the important cases in which they were written, were accessible to the higher officers of the company, and, unless the matters were intrusted entirely to Foshay and Price, were doubtless read by them. The president probably had a personal knowledge of the case. He testified:

"Q. And you rarely come in contact with his work (referring to Price), or know what he is doing in any particular case? A. Not often. Q. Did you know those in this case? A. I presume I was told whatever the facts were in the case. I did not know from Mr. Price at the time it was going on, but I presume I was told."

The cases were important, involving the payment of many thousands of dollars. They were settled out of court, many thousands of dollars being paid. The negotiations were supervised and the settlement concurred in by the head of an important division, who knew of the work of Bostwick, and who accepted and utilized the work, who knew that Bostwick was entitled to, and expected, compensation, and who intended that the compensation should be paid. The records of the corporation disclosed to the president, and all officers to whom Foshay was subordinate, the activities of Bostwick and his expectations, and the utilization of his work by Foshay and Price, and their intentions as to compensation.

The business was either of a character intrusted to heads of a division or of a kind disposed of by still higher officials. The controlling officers, in either case, had knowledge of the facts, or should have known them. The presumption of knowledge could properly be indulged. It was a character of business for the corporation necessarily involving the expenditure of money by the corporation. The controlling officers had, or could and should have had, knowledge of the obligations being incurred. All that was said and done by Foshay and Price was in furtherance of the important work with which they were intrusted. They were selected by the controlling officers of the

corporation for the work. The controlling officers either supervised what they were doing or entirely intrusted the matter to them. Corporations engaged in as large a business as that of defendant cannot have all corporate action through directors or the ordinary executive officers. They will not be permitted to take advantage of benefits accruing from the acts of officers, necessarily invested with large discretion and acting within the scope of their authority, and repudiate the obligations incurred in their acquisition, by denying the authority of the officers. Mere denial of authority will not be conclusive; and one undertaking to enforce his claims against the corporation may establish by circumstances an authority which exists in fact, though it may never have been conferred by any single affirmative act. Acquiescence and confirmation may also be established by circumstances.

Reference has been made to a part only of the pertinent evidence in the instant case. There is, however, no occasion to controvert the quoted conclusions of the trial judge. It is enough to say that, if the issues had been submitted to the jury, and different conclusions reached, the verdict would not have been without substantial supporting evidence. The reason for excluding the letters of May 3 and 4, 1915, from Foshay to Price, does not appear.

The judgment is reversed, and the cause remanded for proceedings in conformity herewith.

Reversed.